Argued September 19; reversed December 4, 1945

# BOWLES, ADM'R., O. P. A. *v.* BARDE STEEL CO., GRESHAM BERRY GROWERS ET AL., LOMBARDI, OWEN, and ANDERSON

(164 P. (2d) 692)

*Arthur G. Silverman* of Washington, D. C., (George Moncharsh, Deputy Administrator for Enforcement, Office of Price Administration, Washington, D. C.;

David London, Chief Appellate Branch, Office of Price Administration, Washington, D. C.; Arthur C. Silverman, Attorney, Office of Price Administration, Washington, D. C.; Herbert H. Bent, Regional Litigation Attorney, San Francisco, California; Fleming James, Jr., Director of Litigation, Office of Price Administration, Washington, D. C.; F. E. Wagner, District Enforcement Attorney, Portland, Oregon; on the brief) for appellant.

*Herbert L. Swett* of Portland, (Hampson, Koerner, Young & Sweet on the brief) for respondent, Barde Steel Company, a corporation.

*A. E. Clark* of Portland, (Clark & Clark on the brief) for respondents Gresham Berry Growers, a corporation, and North Pacific Canners and Packers, Inc.

*Paul R. Harris* of Portland for respondent Martin Lombardi, doing business as The Hotel Australian.

*Lee A. Ellmaker* of Portland for respondent W. L. Owen, doing business as Jack Spratt's Meats.

*Arthur E. Prag* of Portland, (Hoy & Prag on the brief) for respondent Emma Anderson, doing business as Market Tobacco Shop.

Before Belt, Chief Justice, Rossman, Bailey, Lusk, Brand and Hay, Associate Justices.

BRAND, J.

These cases present questions concerning which, with remarkable foresight and commensurate restraint, a distinguished jurist wrote in the year 1818 "much has been said and much still remains to be said." Kirkpatrick, C. J., in *United States v. Smith,* 4 N. J. L. 33 (1 Southard). After a century and a quarter of controversy, it now devolves upon this court further to fulfill that prophecy.

These proceedings are brought under the provisions of the Emergency Price Control Act of 1942, as amended by the Stabilization Extension Act of 1944. 56 Stat. 23, 56 Stat. 765, 58 Stat. 632; 50 U. S. C. A., Appendix §§ 901 to 946, §§ 961 to 971. The statute as thus amended (hereafter called the E. P. C. A.) was enacted "in the interest of the national defense" and is declared "necessary to the effective prosecution of the present war." Among its expressed purposes is the prevention of inflation. E. P. C. A. § 1. The Administrator is empowered to establish by regulation, maximum prices and rentals under restrictions contained in the statute. § 2. The statute provides that it shall be unlawful to violate said regulations, § 204, and provides further that wilfull violation shall be punished by fine and imprisonment, § 205 (b). "The Administrator may utilize the services of Federal, State, and local agencies * * *." § 201 (a). Attorneys for the Administrator "may appear for and represent the Administrator in any case in any court." § 201 (a). "The Administrator

may exercise any or all of his powers in any place."
§ 201 (b).

In Section 204 (d) it is provided that, with the exception of the Emergency Court of Appeals created by the Act, § 204 (c), and the Supreme Court of the United States on certiorari from that court, § 204 (d), "no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation * * *."

Section 205 authorizes the Administrator to make application to the appropriate court for an order enjoining "acts or practices" in violation of the regulations whenever in his judgment a person "has engaged or is about to engage" in such act or practice. Upon proper showing "a permanent or temporary injunction, restraining order or other order shall be granted without bond." § 205 (a).

Section 205 (e) authorizes action by an aggrieved purchaser or tenant against the seller or landlord in the event of sales or rentals in excess of established ceiling prices. The sums recoverable are referred to as "damages." But the damages authorized materially exceed the amounts of the actual overcharges. If the buyer or tenant "either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States."

The constitutionality of the Act has been upheld. *Yakus v. United States,* 321 U. S. 414, 88 L. ed. 834, 64 S. Ct. 660 (1943) ; *Lockerty v. Phillips,* 319 U. S. 182, 87 L. ed. 1339, 63 S. Ct. 1019 (1942) ; *Bowles v. Willingham,* 321 U. S. 503, 88 L. ed. 892, 64 S. Ct. 641 (1943).

We will first consider the three actions in which the Administrator seeks money judgment against the defendants. The questions for decision are whether the Circuit Court of the State of Oregon can take jurisdiction of such actions and, if so, whether it should.

We may inquire first whether the federal statute, properly construed, manifests an intention to authorize state courts to entertain these actions by the Administrator. The defendants contend that it does not.

The Judicial Code of the United States provides:

"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States:

"First. Of all crimes and offenses cognizable under the authority of the United States.

"Second. Of all suits for penalties and forfeitures incurred under the laws of the United States." 28 U. S. C. A. § 371, (Judicial Code § 256, amended).

(It will be observed that crimes and offenses are treated as distinct *from* penalties and forfeitures.) A similar provision has been in effect ever since the Judiciary Act of 1789.

■ Under the statute three questions arise: First, is the plaintiff Bowles seeking to recover what is in reality a penalty in the strict sense of the word? We answer he is. The purpose is to punish an offense against public justice, not to afford a private remedy to a person injured by the wrongful act. *Huntington v. Attrill,* 146 U. S. 657, 36 L. ed. 1123, 13 S. Ct. 224. Second, is the recovery sought to be deemed a "penalty" within the meaning of U. S. C. A. § 371? Third, if the recovery sought would normally be deemed a penalty within the

meaning of that section, have the provisions of the E. P. C. A. expressly authorized the plaintiff to sue in the state courts notwithstanding the provisions of § 371? Upon the second question it is significant that the authorized recovery is designated as one for "damages." § 205 (e). The familiar words "forfeit and pay" commonly employed in statutes imposing penalties do not appear.

The Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U. S. C. A. § 201, et seq., provides that for a violation of its provisions an injured employee may recover the amount due him and "an additional equal amount as liquidated damages."

In *Forsyth v. Central Foundry Co.*, 240 Ala. 277, 198 So. 706 (1940), the court referred to 28 U. S. C. A. § 371 and then said:

"It may also be that Congress cannot by declaration change the nature of a claim to one for liquidated damages when it is but a penalty. But when Congress does that very thing, though it is but a penalty, Congress manifests an unmistakable purpose to exclude it from the operation of a statute which applies to penalties and not to a claim for liquidated damages." *Forsyth v. Central Foundry Co.*, 240 Ala. 277, 198 So. 706.

It was held that 28 U. S. C. A. § 371 did not control because the action was not for the recovery of a penalty *within the meaning of that statute.*

In *Cox v. Lykes Brothers,* the authorized recovery under a federal statute for failure to pay wages was "a sum equal to two days' pay for each and every day during which payment is delayed * * * which sum shall be recoverable as wages." The question was whether the state court had jurisdiction. In an opinion by Judge Cardozo, it was held that the statutory designation of

the recovery " 'as wages' * * * would seem decisive, without more, that in determining the bounds of jurisdiction it is not to be classified as a penalty." *Cox v. Lykes Brothers,* 237 N. Y. 376, 143 N. E. 226.

██ The cases indicate that when Congress designates a recovery as wages (Merchant Seamen's Act), liquidated damages (F.L.S.A.), or damages (E.P.C.A.), it manifests an intention to exclude the case from the operation of 28 U. S. C. A. § 371, regardless of the essential character of the cause of action.

■ Thirdly, the statute clearly and expressly manifests the intention that state courts shall have and exercise jurisdiction in actions by the Administrator and repeals § 371 pro tanto. See *Hade v. McVay, Allison & Co.,* 31 Ohio St. 231 (1877).

■ The statute provides that "the district courts shall have jurisdiction of criminal proceedings * * * and concurrently with State and Territorial courts of *all other proceedings* under section 205 of this Act." § 205 (c). (Italics ours) The phrase "all other proceedings" necessarily includes within its scope actions for damages brought by the Administrator, for such proceedings are expressly authorized "under section 205 of this Act."

The statute also provides: "Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction." § 205 (e). The amended Act concerning venue provides that suits under subsection (e) "shall be brought in the district or county in which defendant resides." The reference to counties obviously relates to state rather than federal court venue. Again the statute authorizes suits for the suspension of licenses issued by the Administrator to be brought in

"any State or Territorial court of competent jurisdiction." The provision that district courts should have jurisdiction concurrent with state courts is apparently borrowed from the Federal Employers' Liability Act. In construing that phrase as it appears in the latter Act, the Wisconsin Court said:

> "In fact, the very language used by Congress in the act amounts to a recognition of the jurisdiction of the state courts, for the state courts are not by the terms of the act granted jurisdiction concurrent with the federal court, but, on the contrary, the federal court is given jurisdiction concurrent with the state courts, thus recognizing the jurisdiction existing previously to the amendment to the Employers' Liability Act, in the state courts." *Chicago, M. & St. P. Ry. Co. v. McGinley,* 175 Wis. 565, 185 N. W. 218.

■ The phrase "any court of competent jurisdiction" was borrowed from the Fair Labor Standards Act. 29 U. S. C. A. § 216 (b). It has been repeatedly held that the phrase means any federal, state or territorial court whose jurisdiction over cases of like nature is not prohibited by law. *Stringer v. Griffin Grocery Co.,* Tex. Civ. App. 1941, 149 S. W. 2d 158; *Mengel Co. v. Ishee,* 192 Miss. 366, 4 So. 2d 878; *Forsyth v. Central Foundry Co.,* supra; *Duke v. Helena-Glendale Ferry Co.,* 203 Ark. 865, 159 S. W. 2d 74, 139 A. L. R. 1404; *Sheridan v. Leitner,* 59 F. Supp. 1011.

In *Claflin v. Houseman* the Supreme Court refers to a federal statute authorizing recovery in a federal court "or any other court having competent jurisdiction" and adds "meaning, of course, the state courts." *Claflin v. Houseman,* 93 U. S. 130, 23 L. ed. 833. The same meaning has been attributed to the phrase when it appears in the E. P. C. A. *Regan v. Kroger Grocery*

& *Baking Co.,* 386 Ill. 284, 54 N. E. 2d 210; *Desper v. Warner Holding Co.,* 219 Minn. 607, 19 N. W. 2d 62. See also *Egling v. Lombardo,* 181 Misc. 108, 43 N. Y. S. 2d 358; *Schaffer v. Leimberg,* Mass., 62 N. E. 2d 193; *Lapinski v. Copacino,* 131 Conn. 119, 38 Atl. 2d 592; *Ordway v. Central National Bank,* 47 Md. 217, 28 Am. Rep. 455; *Cooke v. State National Bank of Boston,* 52 N. Y. 96, 11 Am. Rep. 667; *Carse v. Marsh,* 189 Cal. 743, 210 P. 257; *Bowles v. Willingham,* supra.

Examination of the Senate report on the Emergency Price Control Bill makes clear the intention of Congress concerning the jurisdiction of state courts. Referring to actions to recover damages by a purchaser, the report says "all such actions may be brought in any federal court or state court of competent jurisdiction." The report adds that the provision that the Administrator may sue will apply to situations in which the buyer is barred from suit. Concerning the right of the Administrator to enjoin violations, the report says "the bill authorizes the official charged with the duty of administering the Act to apply to any appropriate court, state or federal." Again we quote:

> "It is provided that the district courts, concurrently with the state and territorial courts, shall have jurisdiction of all other proceedings * * *," (except criminal proceedings and proceedings for suspension of licenses). Senate Report No. 931, 77th Congress, Second Session, January 2, 1942.

Having concluded that the E. P. C. A. manifests the intention that the state courts shall have and exercise jurisdiction in any action under Section 205 (e) by either the buyer or the Administrator, the question now arises as to the effect of that statute on the juris-

diction of the state courts, or the duty of the state courts to exercise jurisdiction if it exists. Judicial consideration of this question from 1789 to date has disclosed not only a conflict of opinion as to the ultimate decision, but also great contrariety as to the considerations and tests which should guide the courts in reaching decisions.

This confusion has permeated even the able briefs of the parties in this case. The ultimate question for decision cannot be considered outside of its historic background and present context to both of which attention is now directed.

We consider first the relationship between the states of the Union where no penalty is involved. It is universally recognized that whenever by the common law a legal liability has been incurred in one state, that liability, if the action is transitory, may be enforced in the courts of another. 11 Am. Jur., Conflict of Laws, §§ 10 and 11. Subject to exceptions to be noted, the same rule applies as to the enforcement of rights arising under the statutory law of a state. Concerning such action, the United States Supreme Court has said:

> "But, when such a liability is enforced in a jurisdiction foreign to the place of the wrongful act, obviously that does not mean that the act in any degree is subject to the *lex fori,* with regard to either its quality or its consequences. On the other hand, it equally little means that the law of the place of the act is operative outside its own territory. The theory of the foreign suit is that, although the act complained of was subject to no law having force in the forum, it gave rise to an obligation, *an obligatio,* which, like other obligations, follows the person, and may be enforced wherever the person may be found." *Atchison, T. & S. F. R. Co. v. Sowers,* 213 U. S. 55, 53 L. ed. 695, 29 S. Ct. 397.

"But when an action is brought upon a cause arising outside of the jurisdiction, it always should be borne in mind that the duty of the court is not to administer its notion of justice, but to enforce an obligation that has been created by a different law. Slater v. Mexican Nat. R. Co. 194 U. S. 120, 126, 48 L. ed. 900, 902, 24 Sup. Ct. Rep. 581. The law of the forum is material only as setting a limit of policy beyond which such obligations will not be enforced there. * * *" *Cuba Railroad Company v. Crosby,* 222 U. S. 473, 56 L. ed. 274, 32 S. Ct. 132, 38 L. R. A. (N. S.) 40.

From a notable opinion by Justice Cardozo, we read:

"A foreign statute is not law in this state, but it gives rise to an obligation, which, if transitory, 'follows the person and may be enforced wherever the person may be found' (Slater v. Mex. Nat. R. R. Co., supra; Lauria v. Du Pont De Nemours & Co., supra; Cuba R. R. Co. v. Crosby, 222 U. S. 473, 478). 'No law can exist as such except the law of the land; but * * * it is a principle of every civilized law that vested rights shall be protected. * * * We do this unless some sound reason of public policy makes it unwise for us to lend our aid. 'The law of the forum is material only as setting a limit of policy beyond which such obligations will not be enforced there' (Cuba R. R. Co. v. Crosby, supra, 478)." *Loucks v. Standard Oil Co.,* 224 N. Y. 99, 120 N. E. 198.

See also *Milwaukee County v. White Co.,* 296 U. S. 268, 80 L. ed. 220, 56 S. Ct. 229, and Restatement, Conflict of Laws, §§ 384 and 392.

The exceptional cases, in which the courts of one state have refused to enforce a right arising under the statute of another state, have been justified under

rules of international law and under the nebulous heading of comity.

> "The misleading word 'comity' has been responsible for much of the trouble. It has been fertile in suggesting a discretion unregulated by general principles (Beale, Conflict of Laws, § 71). The sovereign in its discretion may refuse its aid to the foreign right (St. Louis I. M. & So. Ry. Co. v. Taylor, 210 U. S. 281; Dougherty v. Am. McKenna Process Co., 255 Ill. 369). From this it has been an easy step to the conclusion that a like freedom of choice has been confided to the courts. But that, of course, is a false view (Cuba R. R. Co. v. Crosby, supra, 478). The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Loucks v. Standard Oil Co.,* supra.

Courts of the forum have refused to take jurisdiction when enforcement of the foreign right would violate the domestic public policy, but in this respect a significant trend has become apparent. The change has resulted from a broadened application by the United States Supreme Court of Article IV, Section 1, of the Constitution. That section provides that "full faith and credit shall be given in each state to the public acts, * * * and judicial proceedings of every other state."

> "Due to recent decisions of the Supreme Court of the United States, the freedom exercised under the ancient doctrine of comity, in the sense in which it prevails in conflict of laws among different nations, has been greatly curtailed as between the various states and territories of the United States." 12 Am. Jur., Constitutional Law, § 702.

The clause is no longer limited in its application to the judicial proceedings of another state:

"It is now well settled that a statute is a 'public act' within the meaning of Article 4, § 1, of the Federal Constitution. Hence, if a court of one state refuses to enforce the statute of another state in a case in which it ought to do so and in which the statute gives a right, it thereby denies the full faith and credit demanded by the Federal Constitution, because the statute is a public act of another state." 12 Am. Jur., Constitutional Law, § 702.

The case of *Broderick v. Rossner* involved a suit by a receiver in a New Jersey court on a right created in him by a New York statute. The Court said:

"For the States of the Union, the constitutional limitation imposed by the full faith and credit clause abolished, in large measure, the general principle of international law by which local policy is permitted to dominate rules of comity. * * *

"Where a State has had jurisdiction of the subject matter and the parties, obligations validly imposed upon them *by statute* must, within the limitations above stated, be given full faith and credit by all the other States. * * * (Italics ours.)

"It is sufficient to decide that, since the New Jersey courts possess general jurisdiction of the subject matter and the parties, and the subject matter is not one as to which the alleged public policy of New Jersey could be controlling, the full faith and credit clause requires that this suit be entertained." *Broderick v. Rossner,* 294 U. S. 629, 79 L. ed. 1100, 55 S. Ct. 589, 100 A. L. R. 1133.

See also *Converse v. Hamilton,* 224 U. S. 243, 56 L. ed. 749, 32 S. Ct. 415, Ann. Cas. 1913D, 1292.

In *Milwaukee County v. White Co.,* to which reference will later be made, the Court said:

"The very purpose of the full faith and credit clause was to alter the status of the several states as

independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin. That purpose ought not lightly to be set aside out of deference to a local policy which, if it exists, would seem to be too trivial to merit serious consideration when weighed against the policy of the constitutional provision and the interest of the state whose judgment is challenged." *Milwaukee County v. White Co.,* supra.

In his monumental work on the Conflict of Laws, Beale recognizes exceptional cases in which, by reason of their public policy, courts will not enforce rights created by the laws of another jurisdiction, but he adds:

"There is, moreover, in the law of every jurisdiction a strong policy in favor of recognizing and enforcing rights and duties validly created by a foreign law. These considerations would seem to indicate that the application of the rule of this section should be extremely limited. This is especially true as between the states of the United States, for not only is there little or no variation in the fundamental policies of their respective laws, but here, even more than elsewhere, a uniform enforcement of right is greatly desirable." 3 Beale, Conflict of Laws, § 612.1.

The cases cited above do not involve penalties but they do manifest an evolution toward wider recognition by one state of the rights created by the statutes of another state. The mere fact that the United States is the plaintiff raises no obstacle to suit in a state court. 3 Beale, Conflict of Laws, § 607.1, p. 1630. The United States can and does proceed as a plaintiff in the courts

of the several states. See 1 Stat. 77, 78 (1789). "Thus the United States itself may sue in the State courts and often does." *Claflin v. Houseman,* supra.

Advancing one step further but confining our attention to the relationship between the several states of the United States, we consider whether one state will enforce a penalty created by another state of the Union. The rule on which defendants rely received its classic formulation by Marshall, C. J., in The Antelope, 10 Wheat. 66, 123: "The courts of no country execute the penal laws of another." This was said relative to the slave trade in a controversy based on international law. In discussing this problem as it arises between the states, Beale writes as follows:

> "In considering the problem of extra-state enforcement of penal law the courts have unfortunately placed the entire emphasis on an attempt to define the meaning of the term. In most of the cases at least it would seem that an elaboration of the reason for the rule would not only have been more enlightening generally but also more helpful to the court in arriving at the proper result. Undoubtedly in those situations in which the purpose of the foreign law is to actually punish a citizen of a foreign state, the courts of the forum will do well to refuse to act. However, to extend this principle to obligations such as those arising from death statutes in which the sole purpose is to recompense loss seems to be completely without justification. The trend of the recent cases is undoubtedly toward restricting more closely the field in which the doctrine is applicable; and it would seem beyond doubt that this attitude is greatly to be commended." 3 Beale, Conflict of Laws, § 611.3, p. 1647.

In the earlier cases, and in a few of more recent date, it has been held that the courts of one state will

not enforce statutes penal in character even if their purpose is to afford a private remedy to a person injured by wrongful act. 15 C. J., Courts, § 75, p. 781; and cases cited. 21 C. J. S., Courts, § 71, pp. 109, 110. See criticism of this doctrine in 46 Harv. L. Rev. 193. But by the weight of authority and by the more recent cases, actions of this kind to enforce a penal liability in favor of an individual may be maintained anywhere. 23 Am. Jur., Forfeitures and Penalties, § 56, p. 648. *Riedel Glass Works, Inc. v. Keegan,* 43 F. Supp. 153; *Karvalsky v. Becker,* 217 Ind. 524, 29 N. E. (2d) 560, 131 A. L. R. 1074; *Schaffer v. Leimberg,* supra.

Authorities cited by the defendants establish that the courts of the forum will not entertain actions brought by a foreign sovereign or state (not the United States) to enforce a penalty in the strict or international sense when based on a foreign statute. *Loucks v. Standard Oil Co.,* supra. But before this rule can safely be applied to actions by the United States on a federal penal statute, consideration must be given to the reasons which underlie the rule of international law as between the states.

An early statement for the reason for the rule appears in *Blaine v. Curtis.* The Court said:

"Such laws are universally considered as having no extraterritorial operation or effect, whether the penalty be to the public or to persons." *Blaine v. Curtis,* 59 Vt. 120, 7 Atl. 708, 59 Am. Rep. 702.

Again in *Brigham v. Claflin,* the Court referred to the rule that one state will not take cognizance of penalties imposed by the laws of another state and said:

"In these cases * * * the courts say that the liability imposed upon the officers of the corporation for a failure to perform the duty enjoined by

a statute is in the nature of a penalty; *that the law imposing the liability can have no extraterritorial operation.* * * *"* Brigham v. Claflin, 31 Wis. 607, 11 Am. Rep. 623. (Italics ours.)

And see *McCreary v. First National Bank,* 109 Tenn. 128, 70 S. W. 821.

In *Ordway v. Central National Bank of Baltimore,* supra, the Court was considering an action brought by the injured party to recover a penalty under a federal statute. The Court said:

"The case of the First National Bank of Plymouth vs. Price, 33 Md. 487, has no similitude to the present, except in that case the action was to enforce a liability in the nature of a penalty. There the penalty was given by a statute of Pennsylvania, and the decision proceeded upon the principle, that, as the law had no extraterritorial operation, the Courts of one State will not enforce penalties imposed by the laws of another. But, as has been clearly shown, no such reason or principle applies as to the laws of the United States, when sought to be enforced in the Courts of the several States. The Constitution and laws of the Union are the supreme law of the land, and are as much a part of the law of each State, and as binding upon its Courts and people, as its own local Constitution and laws." *Ordway v. Central National Bank,* supra.

The case, having been brought by the injured party, is to that extent distinguishable from the case at bar. It is cited, however, to show that the reasons for refusal to entertain jurisdiction which prevail between states have no application to the United States.

A further development, which again narrows the permissive scope within which a state may refuse jurisdiction of cases based on a statute of another state, may next be noticed. The defendants rely strongly on

*Wisconsin v. Pelican Ins. Co.,* 127 U. S. 265, 32 L. ed. 239, 8 S. Ct. 1370. That was an original proceeding in the United States Supreme Court to enforce a judgment recovered by the State of Wisconsin in a Wisconsin court. The judgment was based on a Wisconsin law which was ''in the strictest sense a penal statute.'' It was held that the full faith and credit clause and the federal statutes pursuant thereto did not require the United States Supreme Court to enforce the judgment. The decision has since been disapproved. .

Speaking of the Pelican case, the Supreme Court recently said:

''So far as the opinion can be taken to suggest that full faith and credit is not required with respect to a judgment unless the original cause of action would have been entitled to like credit, it is inconsistent with decisions of this Court already noted and was discredited in Fauntleroy v. Lum, supra (210 U. S. 236, 237, 52 L. ed. 1041, 1042, 28 S. Ct. 641), and Kenney v. Supreme Lodge, L. O. M. supra (252 U. S. 414, 64 L. ed. 640, 40 S. Ct. 371, 10 A. L. R. 716).'' *Milwaukee County v. White Co.,* supra.

It is held that ordinarily a state court will not enforce the revenue laws of another state or country (21 C. J. S., Courts, § 72, p. 110), a rule frequently repeated ''merely as a literary corollary to the proposition that no state will enforce the penal laws of another.'' 3 Beale, Conflict of Laws, § 610.2, p. 1638.

*Milwaukee County v. White Co.,* supra, was a case in which the plaintiff took judgment against the defendant in the Wisconsin courts for income taxes due, and then brought suit upon the judgment in the federal court for Illinois. It was essentially a case in which one state sues in another state to enforce the revenue

laws of the first. The Supreme Court held that the federal court should have entertained jurisdiction and must do so under the full faith and credit clause. The Court held that the obligation to pay taxes is not penal and is enforceable in an action of debt.

> "But even if full faith and credit is not commanded there is nothing in the Constitution and laws of the United States which requires a court of a state to deny relief upon a judgment because it is for taxes. A state court, in conformity to state policy, may, by comity, give a remedy which the full faith and credit clause does not compel. * * * A suit to recover taxes due under the statutes of another state has been allowed without regard to the compulsion of the full faith and credit clause. * * *
>
> "Whether one state must enforce the revenue laws of another remains an open question in this Court. * * *
>
> "We intimate no opinion whether a suit upon a judgment for an obligation created by a penal law, in the international sense, see Huntington v. Attrill, supra (146 U. S. 677, 36 L. ed. 1131, 13 S. Ct. 224), is within the jurisdiction of the federal district courts, or whether full faith and credit must be given to such a judgment even though a suit for the penalty before reduced to judgment could not be maintained outside of the state where imposed. See Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 32 L. ed. 239, 8 S. Ct. 1370, supra." *Milwaukee County v. White Co.,* supra.

The Milwaukee County case marks a distinct break from the earlier dogmatic rule regarding penalties and revenue laws and leaves a wide field open for future adjudication.

The foregoing discussion has related to the rule concerning state penalties in state courts. We now

inquire concerning the enforcement of federal statutes in state courts. Ever since the decision of *Martin v. Hunter's Lessee,* 1 Wheat. 304, one argument has been reiterated in many decisions as the basis for an alleged general rule that a state court should not entertain cases in which a plaintiff seeks to enforce a right based on federal statutes, whether penal or not. In that case, Justice Story said: "Congress cannot vest any portion of the judicial power of the United States except in courts ordained and established by itself." The minor premise is that state courts are not ordained and established by Congress.

The following cases cited by the defendants are bottomed on this formula, the conclusion being that a state court cannot take jurisdiction of rights arising under federal statute. *Beavins' Petition,* 33 N. H. 89 (1856), (federal statute, no penalty involved); *Ely v. Peck,* 7 Conn. 239 (1828), (suit for penalty by the injured party); *Davison v. Champlin,* 7 Conn. 244 (1828); *Jackson v. Rose,* 2 Va. Cas. 34 (1815); *United States v. Lathrop,* 17 Johns. 4 (N. Y. 1819), (the last three being suits for penalties in the strict sense).

■ The identical argument appears in defendants' brief and in the opinion of the Circuit Court in the case at bar. But state jurisdiction over cases founded on federal statute does not rest on any theory that Congress can vest in state courts any part of the judicial power of the United States.

After the quoted comment, Justice Story, speaking for the Court, said:

"But it is plain, that the framers of the constitution did contemplate that cases within the judicial cognisance of the United States, not only might, but would, arise in the state courts, *in the exercise of*

*their ordinary jurisdiction.* With this view, the sixth article declares, that 'this constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding.' It is obvious, that this *obligation is imperative upon the state judges, in their official,* and not merely in their private, *capacities.* From the very nature of their judicial duties, they would be called upon to pronounce the law applicable to the case in judgment. They were not to decide merely according to the laws or constitution of the state, but according to the constitution, laws and treaties of the United States—'the supreme law of the land.'" *Martin v. Hunter's Lessee,* supra. (Italics ours.)

This doctrine set forth in the year 1816 anticipates the modern rule which is supported by the authorities. *Herb v. Pitcairn,* 324 U. S. 117, 89 L. ed. 789; *McKnett v. St. Louis & S. F. Ry. Co.,* 292 U. S. 230, 78 L. ed. 1227; *Grubb v. Public Utilities Comm.,* 281 U. S. 470, 74 L. ed. 972; *St. Louis B. & M. Ry. v. Taylor,* 266 U. S. 200, 69 L. ed. 247; *Minn. & St. Louis R. R. Co. v. Bombolis,* 241 U. S. 211, 60 L. ed. 961; *Atchison T. & S. F. Ry. v. Sowers,* supra; *United States v. Jones,* 109 U. S. 513, 27 L. ed. 1015; *Claflin v. Houseman,* supra; *Houston v. Moore,* 5 Wheat. 1; *Kamboris v. Oregon-Washington Co.,* 75 Or. 358, 146 P. 1097; *Forsyth v. Central Foundry Co.,* supra; *Mabry v. Herndon,* 8 Ala. 848; *Carse v. Marsh,* supra; *United States v. Stevens,* 103 Conn. 7, 130 Atl. 249; *Casebolt v. K. & M. Ry. Co.,* 5 Oh. App. 431; *Hade v. McVay, Allison & Co.,* supra; *Ex Parte Gounis,* 304 Mo. 428, 263 S. W. 988; *First National Bank v. Overman,* 22 Neb. 116, 34 N. W. 107;

*Loucks v. Standard Oil Co.,* supra; *Cooke v. State National Bank,* supra; *Hartley v. United States,* 3 Haywood 45 (Tenn.) ; *Chicago, M. & St. P. Ry. Co. v. McGinley,* supra; No. 82, The Federalist by Hamilton; 1 Kent Comm. *403 (14th Ed.)

The foregoing citations include only cases arising under federal statutes where no penalty in the strict sense was sought, and establish that as to such cases at least the power exercised is the judicial power of the states and not of the United States, although the right sued upon is created by federal statute.

The earlier cases, many of which have been cited, indicate that the state courts may take jurisdiction in cases based on federal statutes, but cannot be required by federal statute to do so.

"It is true that the State Courts have, in certain instances, declined to exercise the jurisdiction conferred upon them; but this does not militate against the weight of the general argument." *Claflin v. Houseman,* supra.

See also *Stephens Petitioner,* 70 Mass. 559; *Ex Parte Gounis,* supra; *Beavins' Petition,* supra; *First National Bank v. Overman,* supra, (action for penalty by injured party) ; 1 Kent Comm., *403.

The doctrine of optional jurisdiction has undergone radical change. The leading case is *Mondou v. New York, N. H. & H. Ry. Co.,* (Second Employers' Liability Cases), 223 U. S. 1, 56 L. ed. 327, 32 S. Ct. 169, 38 L. R. A. (N. S.) 44. It was held that state courts have jurisdiction under the Federal Employers' Liability Act, (F. E. L. A.), and the Court then said:

"* * * We deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts

or to control or affect their modes of procedure, but only a *question of the duty of such a court,* when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the prevailing rules of procedure. * * *

"The suggestion that the act of Congress is not in harmony with the policy of the State, and therefore that the courts of the State are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State. * * *

"The existence of the jurisdiction creates an implication of duty to exercise it * * *.

"But it never has been supposed that courts are at liberty to decline cognizance of cases of a particular class merely because the rules of law to be applied in their adjudication are unlike those applied in other cases.

"We conclude that rights arising under the act in question may be enforced, *as of right,* in the courts of the States when their jurisdiction, as prescribed by local laws, is adequate to the occasion." *Mondou v. New York, N. H. & H. Ry. Co.,* (Second Employers' Liability Cases), supra. (Italics ours.)

It is earnestly urged that the case of *Douglas v. New York, N. H. & H. R. Co.,* 279 U. S. 377, 73 L. ed. 747, has modified the Mondou case upon the question of the duty of a state court to entertain non-penal actions

under federal statutes. The Douglas case was brought under the Federal Employers' Liability Act in a New York court by citizen and resident of Connecticut against a Connecticut corporation.

So far as the case is of importance here, the significant facts are as follows: The trial court assumed that the New York statute gave it discretionary power as to whether it would or would not entertain such an action. The Court of Appeals affirmed the decision of the trial court; and, to quote the words of Justice Holmes: "Thus it is established that the statute purports to give to the court the power that it exercised." The use of the word "may" in the statute, providing that an action against a foreign corporation "may" be maintained, was apparently the ground for holding that the exercise of jurisdiction was made optional under the provisions of the statute. The Court then said:

> "As to the grant of jurisdiction in the Employers' Liability Act, that statute does not purport to require State Courts to entertain suits arising under it, but only to empower them to do so, so far as the authority of the United States is concerned. *It may very well be that if the Supreme Court of New York were given no discretion, being otherwise competent, it would be subject to a duty.* But there is nothing in the Act of Congress that purports to force a duty upon such Courts as against an otherwise valid excuse." *Douglas v. New York, N. H. & H. R. Co.,* supra. (Italics ours.)

It is to be noted that the "otherwise valid excuse" which authorized the New York trial court to refuse jurisdiction was based upon a *statute* of limited scope applying only to actions against foreign corporations by nonresidents, which statute, as construed by the New York court, made jurisdiction discretionary. The

fact that the Mondou case was cited with approval in the Douglas case indicates that there was no intention to criticize that decision.

■ There is a marked distinction between limitations arising from *organic* or *statutory* provisions concerning jurisdiction on the one hand, and limitations imposed by judicial opinion under rules of comity on the other. Concerning jurisdiction of the subject matter, it is said: ''Such jurisdiction the court acquires by the act of its creation, and possesses inherently by its constitution.'' 21 C. J. S., Courts, § 35, p. 45.

Judicially imposed limitations may better be classed as refusals to exercise jurisdiction rather than denials of its existence. As said by Judge Cardozo:

> ''The sovereign in its discretion may refuse its aid to the foreign right. (St. Louis, I. M. & So. Ry. Co. v. Taylor, 210 U. S. 281; Dougherty v. Am. McKenna Process Co., 255 Ill. 369) From this it has been an easy step to the conclusion that a like freedom of choice has been confided to the courts. But that, of course, is a false view.'' *Loucks v. Standard Oil Co.,* supra.

It is said in *Sacco v. Baltimore & O. R. Co.*:

> ''Where the statute which confers jurisdiction itself vests the court with a discretion to decline to exercise that jurisdiction, unquestionably the court may do so.'' *Sacco v. Baltimore & O. R. Co.,* 56 F. Supp. 959.

*Walton v. Pryor,* 276 Ill. 563, 115 N. E. 2, L. R. A. 1918E, 914, (1916), is in some respects similar to the Douglas case. That case proceeded on the theory that an action under federal statute may be enforced *as of right* if within the jurisdiction of a state as *fixed by local laws.* But if the statutory jurisdiction over

the subject matter is not competent to the case, the state court need not enforce.

■ It appears to be true that a state court need not enforce a federal statute if the state constitution or statute excludes, from the jurisdiction of the state court, actions of the general class to which the federal statute belongs, assuming, of course, that there is no discrimination against federal acts as such (see infra); but, where the statutory jurisdiction is adequate, "it would be subject to a duty," there being no "valid excuse."

In *Miles v. Illinois Central Railroad Co.,* the United States Supreme Court cited the Mondou case with approval and said:

"The venue of the state court suits was left to the practice of the forum. The opportunity to present causes of action arising under the F. E. L. A. in the state courts came, however, not from the state law but from the federal. By virtue of the Constitution, the *courts of the several states must remain open* to such litigants on the same basis that they are open to litigants with causes of action springing from a different source. This is so because the Federal Constitution makes the laws of the United States the supreme law of the land, binding on every citizen and every court and enforceable wherever jurisdiction is adequate for the purpose." Miles v. Illinois Central R. Co., 315 U. S. 698, 86 L. ed. 1129, 62 S. Ct. 827, 146 A. L. R. 1104. (Italics ours.)

In *Miller v. Municipal Court of Los Angeles,* the Court said:

"From the course of the decisions, it is apparent that the federal Supreme Court has moved slowly and with obvious reluctance, in the area of conflicting jurisdiction between the States and the Nation, to compel unwilling states to enforce fed-

eral laws. A state court, however, should willingly and unequivocally recognize a clear constitutional duty." *Miller v. Municipal Court of City of Los Angeles,* 22 Cal. 2d 818, 142 P. (2d) 297.

In *Leet v. Union Pac. R. Co.,* it was said:

" 'By virtue of the Constitution, *the courts of the several states must remain open to such litigants on the same basis* that they are open to litigants with causes of action springing from a different source. This is so because the Federal Constitution makes the laws of the United States the supreme law of the land, binding on every citizen and every court and enforceable wherever jurisdiction is adequate for the purpose. * * *' " *Leet v. Union Pac. R. Co.,* 25 Cal. (2d) 605, 155 P. (2d) 42.

The Court added that the Miles case "is conclusive that the state court *must* take jurisdiction. It has no choice in the matter and no rule or policy on its part alters the situation. It has long been the law that where there is a competent state court, it must entertain an action under the F. E. L. A." *Leet v. Union Pacific R. Co.,* supra.

In *United States v. Sumner,* the New York court said:

"The state of New York cannot refuse the process of its courts for the prosecution of actions authorized by the Volstead Act, and it cannot forbid its officers exercising the powers or performing the duties conferred and imposed by such law, nor has it attempted to do so. Second Employers' Liability Cases, 223 U. S. 1, 57, 58, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; 15 C. J. 1155." *United States v. Sumner,* 211 N. Y. S. 705.

To the same effect see *United States v. Stevens,* supra.

In *State ex rel. Schendel v. District Court of Lyon County,* a case under the Federal Employers' Liability Act, the Court said:

"Under the doctrine of the Second Employers' Liability Cases the state court must exercise its jurisdiction, if adequate to the occasion, when a suitor comes to it. It is not a matter of its pleasure. It may not want his case. It may think the burden of trying it and the attendant expense should be borne in another state; but there is a right in the suitor, and a corresponding duty in the court, so the Supreme Court said." *State ex rel. Schendel v. Dist. Ct. of Lyon Co.,* 156 Minn. 380, 194 N. W. 780.

Finally, in *Herb v. Pitcairn,* supra, the plaintiff brought suit in the City Court of Illinois on a cause of action based on the Federal Employers' Liability Act. The Court said:

"For as we have said of the Federal Employers' Liability Act, 'we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts or to control or affect their modes of procedure, but only a question of the *duty of such a court,* when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the prevailing rules of procedure.' " (Citing the Mondou case.) *Herb v. Pitcairn,* supra. (Italics ours.)

See also *Union Brokerage Co. v. Jensen,* 322 U. S. 202, 88 L. ed. 1227; *St. Louis B. & M. Ry. Co. v. Taylor,* supra; *Gauthier v. Morrison,* 232 U. S. 452, 58 L. ed. 680; *Louisiana & Ark. Ry. Co. v. Pratt,* 142 F. (2d) 847; *Union Pacific Railroad Co. v. Utterback,* 173 Or. 572, 146 P. (2d) 76; *Regan v. Kroger Grocery & Bak-*

*ing Co.,* supra; *Harrison v. Herzig Building & Supply Co.,* 290 Ky. 445, 161 S. W. (2d) 908; *French v. R. P. Smith & Sons Co.,* 81 Minn. 341, 84 N. W. 44.

The modern principle which recognizes not only a power, but also a duty, on the part of state courts to entertain action for the enforcement of rights created by federal statute has been applied in cases brought by the injured party for the recovery of penalties created by the E. P. C. A. In *State ex rel. Bowles v. Olson,* we said:

"Clearly, the district court of Multnomah County has jurisdiction to entertain actions of the kind under discussion, limited of course to cases in which the amount claimed does not exceed jurisdictional amount specified in O. C. L. A. § 13-302. * * *

"If a complaint in the district court shows that court to have jurisdiction of the subject matter under the federal statute, it would be the duty of the district court to assume jurisdiction even though the complaint was defective, or even demurrable, in respects relating to matters other than jurisdiction." *State ex rel. v. Olson,* 175 Or. 98, 151 P. (2d) 723.

In a similar case the Supreme Court of Massachusetts said: "We think that the court below was not at liberty to decline jurisdiction * * *," citing the Mondou case. *Schaffer v. Leimberg,* supra. See also *Brown v. DeConcini,* 60 Ariz. 476, 140 P. (2d) 224; *Miller v. Municipal Court of City of Los Angeles,* supra; *Lapinski v. Copacino,* supra; *Regan v. Kroger Grocery & Baking Co.,* supra; *Campbell v. Heiss,* 222 Ind. 297, 53 N. E. (2d) 634; *Desper v. Warner Holding Co.,* supra; *Carmelly v. Hanson,* 133 N. J. L. 180, 43 Atl. (2d) 685; *Wutkowski v. Palutes,* 131 N. J. L. 441, 37 Atl. (2d) 29; *Beasley v. Gottlieb,* 131 N. J. L. 117,

35 Atl. (2d) 49; *Egling v. Lombardo,* supra. Contra, *Robinson v. Norato, R. I.,* 43 Atl. (2d) 467.

Cases holding that state courts should entertain jurisdiction of suits brought by the injured party for the recovery of penalties under other federal statutes are the following: *First National Bank of Charlotte v. Morgan,* 132 U. S. 141, 33 L. ed. 282; *Duke v. Helena-Glendale Ferry Co.,* supra; *Ingraham v. Merchants National Bank,* 153 Iowa 408, 132 N. W. 869; *Ordway v. Central National Bank of Baltimore,* supra; *First National Bank v. Overman,* supra; *Floyd v. DuBois Soap Co.,* 139 Ohio St. 520, 41 N. E. (2d) 393; *Hade v. McVay, Allison & Co.,* supra; *Bletz v. Columbia National Bank,* 87 Pa. St. 87, 30 Am. Rep. 343; *McCreary v. First National Bank,* supra.

In the light of the principles which we have reviewed in cases similar but not identical to those at bar, we turn to the exact issue here presented. The government, not an injured individual, seeks the penalty. If brought by another state of the Union, upon a similar state statute, the issue would be determined under the rules of comity. But those rules do not encompass the federal-state relation. The case at bar must be decided upon a broader basis.

It will be observed that the federal statutes enacted, while the influence of the Constitutional fathers was still strong, expressly authorized state courts to take jurisdiction in actions based on federal statutes which were penal in the strict sense. Act of March 3, 1791, Chap. 15, §§ 42 and 44, 1 Stat. L. 209; Act of June 5, 1794, Chap. 45, § 10, 1 Stat. L. 373; Act of June 5, 1794, Chap. 48, § 5, 1 Stat. L. 376, 378; Act of June 9, 1794, Chap. 65, § 12, 1 Stat. L. 397, 400; Act of June 6, 1797, Chap. 11, § 20, 1 Stat. L. 527, 532; Act of Feb. 28, 1799,

Chap. 17, § 5, 1 Stat. L. 622, 623; Act of Feb. 23, 1801, Chap. 4, § 11, 2 Stat. L. 89; Act of July 24, 1813, Chap. 25, § 6, 3 Stat. L. 42, 44; Act of August 2, 1813, Chap. 39, § 5, 3 Stat. L. 72; Act of June 3, 1864, Chap. 106, § 57, 13 Stat. L. 99, Rev. Stat. § 5198; Act of Feb. 18, 1875, Chap. 80, 18 Stat. L. 316, 320. In *Davison v. Champlin* (1828), supra, cited by the defendants, the Court referred to the foregoing Congressional practice which "has been followed by successive legislation to this day."

Concerning the relationship of state courts to federal penal statutes, the view of Chancellor Kent is entitled to weight. He says of the state courts:

"Their jurisdiction of federal causes is, however, confined to civil actions, *or to enforce penal statutes*; and they cannot hold criminal jurisdiction * * *." 1 Kent Comm. *403 (14th Ed.) (Italics ours.)

We will next analyze all of the cases cited by the defendants in which a state court refused to take jurisdiction of a suit by or for the United States under a strictly penal federal statute.

In *Jackson v. Rose* (1815), supra, the decision is based on the reasoning that Congress cannot vest the judicial power of the United States in state courts, which has been shown to be true but immaterial. It said:

"* * * There is no principle of Universal Law which authorizes one Sovereign to empower, or direct the Judiciary of another to do so * * *.

"If such a system shall be once adopted, it will introduce a strange kind of Mosaick work into the Judiciary system of Nations. Here, a Code, committing to the flames an Italian for denying the Pope's infallibility: there, the stern Fathers of the Holy Inquisition impaling a poor Turk, because

he denies that Mahomet is the Prophet of God: The Judges of Republican Virginia pillorying an Englishman for libelling Royalty, and the Court of King's Bench inflicting the same punishment upon an American for libelling the Government of the United States for the late declaration of war." *Jackson v. Rose,* supra.

The penalty for which suit was brought was by way of enforcement of the federal revenue laws. In the modern view it would be considered "civil and remedial," *Helvering v. Mitchell,* 303 U. S. 391, 82 L. ed. 917; and, even if the penalty were created by state law and suit were by a state, enforcibility would "[remain] an open question" in the United States Supreme Court, *Milwaukee County v. White Co.,* supra. A fortiori in the case of state enforcement of a remedial penalty at the suit of the United States. *Jackson v. Rose* illustrates the distinction between the enforcement of a federal statute on the one hand, and the enforcement of the statute of a foreign state on the other. The federal statute expresses authoritatively the public policy of the state of the forum, while the statute of any other state does not.

The same reasoning, concerning the non-delegability of federal judicial power, was employed in *Davison v. Champlin* (1828), supra; *United States v. Campbell,* Tappan (Ohio 1816) 61; *United States v. Lathrop* (1819), supra; *State v. McBride,* 1 Rice (S. C. L. 1839) 400; and *Ely v. Peck* (1828), supra. The last mentioned case is no longer law because the action was brought by the injured party, and, under the Olson case and many others cited supra, the state court had jurisdiction and should have exercised it.

*Haney v. Sharp,* 1 Dana (Ky. 1833) 442, was a *qui tam* action by a census taker to recover from the

defendant a penalty of $20 under the provisions of the Act of March 23, 1830, Chap. 40, § 6, 4 Stat. L. 386. The Court said:

> "The courts of this State, deriving their jurisdiction, as they do, from the authority of the State, cannot take cognizance of a penal case arising under an act of Congress, unless some law of this Commonwealth had given the right to do so, and the General Government had, by an act of Congress, also consented. In such a case as this, no tribunal of the State has an inherent or concurrent jurisdiction; and therefore, without such co-operative legislation as that just suggested, the jurisdiction of the courts of the federal government must necessarily be exclusive. And whether any legislation would confer jurisdiction, in such cases, on state courts, depends on the proper construction of the federal and state constitutions, which we will not now consider, as there has been no legislation on the subject." *Haney v. Sharp,* 1 Dana (Ky.) 442.

*State v. Pike,* 15 N. H. 83 (1844), and *Huber v. Reily,* 53 Pa. St. 112 (1866), are not in point.

*State v. McBride,* supra, is sufficiently distinguished by the fact that it was a criminal indictment for larceny brought in the state court and based on a federal statute. It reflects states' rights sentiments of South Carolina in 1839. One judge dissented. The McBride case overrules the excellently reasoned earlier case of *State v. Wells,* 2 Hill. (S. C.) 337, also a criminal prosecution.

In *Delafield v. Illinois* no penalty, state or federal, was involved. As pure dictum, the Court said:

> "Again: crimes are only punishable by the government against which they are committed, and the state courts will not enforce the penal laws of the United States, or of any other state. This rests on a general principle wholly independent of the

federal constitution." *Delafield v. Illinois,* 2 Hill (N. Y.) 159.

*Teall v. Felton,* 1 N. Y. 537, 49 Am. Dec. 352 (1848), was an action in trover for six cents damages. No penalty was involved. The case contained the same dictum as in Delafield v. Illinois followed by a comment which based The Antelope rule on principles "older than the federal constitution, and wholly independent of it."

In *Floyd v. DuBois Soap Co.,* supra, no penalty was involved. There is a dictum that Congress may not *confer* jurisdiction for the recovery of penalties.

In support of defendants' contention that the general rule as between states should apply to cases brought under the penal laws of the United States and that a state and the United States are separate and distinct sovereignties, foreign to each other so far as concerns the enforcement by one of the penal laws of another, the defendants cite: *Texas v. Donaghue,* 302 U. S. 284, 82 L. ed. 264; *Wisconsin v. Pelican Ins. Co.,* supra; *Younts v. Southwestern T. & T. Co.,* 192 Fed. 200; *United Breweries Co. v. Colby,* 170 Fed. 1008; *Stichtenoth v. Central Stock & Grain Exch.,* 99 Fed. 1; *State of Indiana v. Allegeheny Oil Co.,* 85 Fed. 870; *State of Texas v. Day Land & Cattle Co.,* 41 Fed. 228; *State of Iowa v. Chicago, B. & Q. R. R. Co.,* 37 Fed. 497; *In re Denver & R. G. W. R. Co.,* 27 F. Supp. 983. And see: *Gwinn v. Breedlove,* 2 How. 29, (not cited).

The cases cited in each instance involve action in a federal court upon a penalty created by state statute. It is, of course, clear that a state statute has no extra-territorial effect throughout the United States but is limited strictly to the boundaries of the enacting state; nor, as will further appear, does the federal govern-

ment have obligations to enforce state laws, such as the obligations of states to enforce federal laws. The supremacy clause of the Federal Constitution does not operate in reverse. The cases are not in point.

*Robertson v. Baldwin,* 165 U. S. 275, 41 L. ed. 715, (1897) involved no penalty. It repeats that Congress cannot vest the judicial power of the United States in state courts and cites cases in support, including *United States v. Lathrop,* supra, now to be considered. The action was for the recovery by the United States of a penalty prescribed by the internal revenue laws. The Court said, first, that the whole case depends on the provisions of the Constitution of the United States. It held that Congress cannot vest the judicial power of the United States in a state court, which can have concurrent jurisdiction only " 'in those cases, *where previous to the constitution,* state tribunals possessed jurisdiction, independent of national authority'." (Italics ours.) It said: " * * * As regards crimes and offenses, made so by legislative enactment, the government of the United States stands in the same relation to the state governments, as any foreign government; and * * * the courts of one sovereignty will not take cognizance of, nor enforce the penal code of, another."

The dissent of Platt, J., constitutes a persuasive answer to the majority opinion and one in harmony with the modern decisions. He holds that the vesting of judicial power of the United States in the federal courts was "without any view to the question of exclusive or concurrent jurisdiction between the several states and the United States." He admits that Congress cannot vest the judicial power of the United States in a state court. He holds that Congress has discretion to authorize concurrent jurisdiction and that it has

expressly done so. He points out that it makes no difference whether jurisdiction be exclusive or concurrent "because the *appellate* power of the federal courts is made co-extensive with the *concurrent* jurisdiction of the state courts." He holds that the federal statute "has, in effect, only waived the exclusiveness of federal jurisdiction, quoad hoc," and points out that *Martin v. Hunter's Lessee,* supra, cited by the majority, is not inconsistent with his view. He then states the modern test, to-wit:

"1st. Whether, independent of any provision in the constitution of the United States, the general common law jurisdiction of this court, attaches in such a case? and 2dly, If such a right exists on general principles, as an inherent power in this court, whether there be any thing in the constitution of the United States which deprives us of such jurisdiction?" *United States v. Lathrop,* supra.

He quotes extensively from Number 82 of the Federalist by Alexander Hamilton in part as follows:

" " * * * *I am even of opinion, that in every case in which they were not expressly excluded by the future acts of the national legislature, they will, of course, take cognizance of the causes to which these acts may give birth.* This I infer from the nature of judiciary power, and from the general genius of the system. The judiciary power of every government looks beyond its own local or municipal laws; and in civil cases, lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe. Those of *Japan,* not less than of *New York,* may furnish the objects of legal discussion to our courts. When, in addition to this, we consider the state governments, and the national governments as they truly are, in the light of kindred systems, and as parts of *one whole, the inference seems to be conclusive, that the*

*state courts would have a concurrent jurisdiction in
all cases arising under the laws of the Union, where
it was not expressly prohibited.'* " *United States v.
Lathrop,* supra.

He accepts the general doctrine of The Antelope
case, but adds:

"I am of opinion, that this court has jurisdiction
to give a *civil remedy* for a debt due to the *United
States,* whether that debt accrued upon contract, or
by way of penalty for a violation of a statute. We
do not acquire such jurisdiction by virtue of the act
of Congress; it is inherent in this court, as a court
of general common law jurisdiction. * * * In doing
so, Congress have not attempted to ordain and
establish the state courts, as inferior *courts of the
United States,* in the sense of the constitution; but
have, in effect, merely qualified, or repealed in part,
the original statute of the *United States,* (passed
the 24th of *September,* 1789,) which gave *exclusive*
jurisdiction to the federal courts for such penal-
ties." *United States v. Lathrop,* supra.

The dissent of Platt, J., in *United States v. Lathrop*
rises to primary importance in view of the respect paid
it in *Claflin v. Houseman,* supra. The question there
was whether the assignee in bankruptcy could sue in
state courts to recover a fraudulent preference. Here
the Court expressly invokes the supremacy clause of
the Federal Constitution (Article VI).

"Every citizen of a State is a subject of two
distinct sovereignties, having concurrent jurisdic-
tion in the State; concurrent as to place and persons,
though distinct as to subject-matter. Legal or
equitable rights, acquired under either system of
laws, may be enforced in any court of either sov-
ereignty competent to hear and determine such kind
of rights and not restrained by its Constitution in
the exercise of such jurisdiction." *Claflin v. House-
man,* supra.

Again the Court said:

"So, by Acts passed in 1806 and 1808, jurisdiction was given to the County Courts along the northern frontier, of suits for fines, penalties and forfeitures under the Revenue Laws of the United States. 2 Stat. at L., 354, 489. And by Act of March 3, 1815, cognizance was given to State and County Courts, generally, of suits for taxes, duties, fines, penalties and forfeitures arising under the laws imposing direct taxes and internal duties. 3 Stat. at L., 244.

"These instances show the prevalent opinion which existed, that the State Courts were competent to have jurisdiction in cases arising wholly under the laws of the United States; and whether they possessed it or not, in a particular case, was a matter of construction of the Acts relating thereto. It is true that the State Courts have, in certain instances, declined to exercise the jurisdiction conferred upon them; but this does not militate against the weight of general argument. See U. S. v. Lathrop, 17 Johns., 4. *See, especially, the able dissenting opinion of Mr. Justice Platt,* Id., 11." *Claflin v. Houseman,* supra. (Italics ours.)

The statutes to which the Court referred in the above passage prescribed penalties recoverable by the United States and constituted penal actions in the strict sense. By its reference to these statutes and by its favorable comment on the dissent of Justice Platt in the Lathrop case, we think the Supreme Court committed itself by persuasive dictum to the effect that the state courts may entertain jurisdiction of actions by the United States under federal penal statutes.

*Newell v. National Bank of Somerset* was an action to recover a penalty on account of a charge of usurious interest. The defendant prevailed. The Court said:

"The courts of this state have not up to this time undertaken to enforce penalties arising under the

laws of the government of the United States, and these cases present no sufficient reason to authorize the inauguration of a new judicial policy upon that subject." *Newell v. National Bank of Somerset,* 75 Ky. 57.

This case, by implication, recognizes that a state court might take jurisdiction. Furthermore, being an action by the injured party for a penalty under federal statute, it is against the weight of authority.

We turn to cases directly supporting the position of the Government. *Hartley v. United States* (1816) was an action in the circuit court of Tennessee to recover a penalty incurred under an Act of Congress of 1813 for a violation of federal liquor laws. Jurisdiction in the state courts was expressly authorized. It was held that the state court had jurisdiction. The Court said:

> "The Constitution and the laws of the United States, made pursuant thereto, are the supreme laws of the land, and not only the citizens in their individual capacities, but the judges in every State are bound thereby. If a case is brought before them in which a right is claimed to recover by virtue of such a law, the Court is in duty bound to hear and determine it, unless it be a case where the jurisdiction is exclusively vested in the United States' tribunal. But notwithstanding this, they are still to be considered State courts; deriving no jurisdiction from the United States, but only exercising that vested in them by the Constitution and laws of the State. * * *" *Hartley v. United States,* supra.

This case was cited with approval in *McCreary v. First National Bank,* supra.

In *United States v. Uriah Smith,* supra, the charge was similar to that in *Hartley v. United States.* The

court held that since the action which "[gave] the state courts jurisdiction in these cases, is unequivocal; inasmuch as the practice under it, so far as I know, has been universal," the jurisdiction of the trial court would be upheld.

*Stearns v. United States,* 22 Fed. Cas. 1188, Case No. 13,341, was brought in the United States Circuit Court. The question was whether the State of Vermont had jurisdiction to render a judgment for a penalty incurred under federal statute. The action was for a penalty in the strict sense, and jurisdiction had been entertained in the state court. The federal court held that the state court had jurisdiction under the express provisions of the federal statute.

*Buckwalter v. United States,* 11 Serg. and R. (Pa. 1824) 193, was another action by the United States to recover a penalty on account of liquor sold without a license. The jurisdiction of the state court was upheld. The Buckwalter case was subsequently questioned by a pure dictum in *Huber v. Reily,* supra, but was cited with approval in the later case of *Bletz v. Columbia National Bank* (1878), supra.

It is argued by the defendants that *Huntington v. Attrill,* supra, is contrary to the view here expressed. In that case the plaintiff took judgment against the defendant in New York and sued thereon in Maryland. The New York judgment was based on a New York penalty statute but not penal in the international sense, being recoverable for the benefit of the injured party. The Supreme Court held that the full faith and credit clause of the Constitution does not require enforcement of a judgment if that judgment be based on a penal statute in the international sense, relying upon *Wisconsin v. Pelican Ins. Co.,* supra, which was expressly

disapproved in *Milwaukee County v. White Co.,* supra. The latter case said:

> "We intimate no opinion whether a suit upon a judgment for an obligation created by a penal law, in the international sense, see Huntington v. Attrill, supra (146 U. S. 677, 36 L. ed. 1131, 13 S. Ct. 224), is within the jurisdiction of the federal district courts, or whether full faith and credit must be given to such a judgment even though a suit for the penalty before reduced to judgment could not be maintained outside of the state where imposed. See Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 32 L. ed. 239, 8 S. Ct. 1370, supra." *Milwaukee County v. White Co.,* supra.

The penalty involved in the Pelican case was created by state and not federal statute. By way of pure dictum the Court said, however:

> "Upon similar grounds, the courts of a State *cannot be compelled* to take jurisdiction of a suit to recover a like penalty for a violation of a law of the United States." *Huntington v. Attrill,* supra. (Italics ours.)

In support of this statement it cited the identical cases which we have already reviewed and distinguished.

Concerning this apparent conflict between the holdings in *Claflin v. Houseman* and *Huntington v. Attrill,* the Supreme Court of Maryland made a significant comment in *Lambros v. Brown.* That was an action under the E. P. C. A. by the injured party to recover a penalty.

> "It seems to be clear, moreover, on the authority of the later Supreme Court cases, that the State Courts should take jurisdiction of the enforcement of civil liabilities created by Acts of Congress, whether they are construed as penal or whether

they are construed as merely remedial. That was the view taken in Claflin v. Houseman, supra, as shown by the quotation from that case, set out earlier in this opinion. And Judge Alvey, speaking for this Court in Ordway v. Central National Bank, supra, decided in 1877, said that the reason or principle underlying the denial of enforcement by one State of penalties created by the statute of another, had no application 'to the laws of the United States, when sought to be enforced in the Courts of the several States.' When Huntington v. Attrill, supra, was decided, the doctrine was disapproved that there should be a different approach to the enforcement of statutes of the United States creating civil penalties from that used in connection with the enforcement of similar statutes of other states. The Supreme Court said in that case that the only authorities for such distinction were Claflin v. Houseman, supra, and Ordway v. Central National Bank, supra. Yet, in 1912, when the Second Employers' Liability Cases were decided, the Supreme Court went back to the earlier doctrine, and quoted with approval the statements in Claflin v. Houseman which had been used by Judge Alvey as a basis for the holding in Ordway v. Central National Bank and which had been cited with disapproval in Huntington v. Attrill. And there have been later cases following the decision in the Second Employers' Liability Cases. We must, therefore, regard this last mentioned decision as controlling authority that the remedies sought in the action before us, under Section 205 (e) of the Emergency Price Control Act are enforceable in the Maryland courts." *Lambros v. Brown,* Md. (1945), 41 Atl. (2d) 78.

No case arising within the past hundred years has been cited in which the exact issue presented here has been at issue and decided by a state or federal court. However, in several cases involving actions brought by the buyer under E. P. C. A. § 205 (e), the courts

have indicated that a similar result would follow if the action had been brought by the Price Administrator instead of the buyer.

In *Lapinski v. Copacino,* supra, the Court said:

"We need not inquire whether the action before us is one for a penalty or forfeiture within the scope of § 256, because, if it were, the explicit terms of the provision of § 205 (e), that any action under it might be brought in any court of competent jurisdiction, would create an exception." *Lapinski v. Copacino,* supra.

In *Regan v. Kroger Grocery & Baking Co.,* supra, and concerning the matter of penal statutes, the Court said:

"The difficulty with the attempt to apply that rule to this case is, the Emergency Price Control Act is not a statute of a foreign jurisdiction. The laws of Congress are as much the laws of this State as the enactments of our own legislature. Article VI of the Federal constitution provides: 'This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby * * *.' Congress has power to confer jurisdiction on State courts. The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397; Stewart v. Kahn, 11 Wall. 493, 20 L. Ed. 176. It also has the power to regulate procedure in State courts in the enforcement of Federal laws. Clark v. Mechanics' American Nat. Bank, 8 Cir., 282 F. 589; Konkel v. State, 168 Wis. 335, 170 N. W. 715; Erickson v. Macy, 231 N. Y. 86, 131 N. E. 744, 16 A. L. R. 1322. * * *

"The result is that whether the act be regarded as penal or remedial, makes no difference in this case. It is not a law of a foreign sovereignty. The Emergency Price Control Act is a law of Illinois and enforceable as such. The courts of Illinois have not

been denied jurisdiction by the act. Such jurisdiction has been expressly granted to them, concurrent with the Federal courts." *Regan v. Kroger Grocery & Baking Co.,* supra.

In *United States v. Jones,* decided in 1883, the Court said:

"At different times, various duties have been imposed by Acts of Congress on state tribunals; they have been invested with jurisdiction in civil suits and over complaints and prosecutions for fines, penalties and forfeitures arising under laws of the United States. 1 Kent, 400. And though the jurisdiction thus conferred could not be enforced against the consent of the States; yet, when its exercise was not incompatible with state duties, and the States made no objection to it, the decisions rendered by the state tribunals were upheld." *United States v. Jones,* supra.

See also *Hade v. McVay, Allison & Co.* (1877), supra.

In *Desper v. Warner Holding Co.* (1945), supra, the Court held the action under E. P. C. A. § 205 (e) to be remedial, but it added:

"Furthermore, it has universally been held that in actions of this kind, whether the act be regarded as penal or remedial in nature, the United States is not a foreign sovereignty attempting to enforce a penal statute, and for that reason the state courts have jurisdiction to enforce the same." *Desper v. Warner Holding Co.,* supra.

In *Schaffer v. Leimberg,* (1945), supra, the Massachusetts court said:

"Where Congress has given to State courts jurisdiction of such sort as Congress has seen fit to give, to enforce an act of Congress, and those courts under State law have jurisdiction that enables

them to enforce it, they are not at liberty, *at least in civil proceedings,* to decline to exercise that jurisdiction on the ground that the act of Congress is contrary to the public policy of the State or contravenes its Constitution or laws. Within its field, Congress speaks for the whole nation and establishes a policy for every State that supersedes any local policy to the contrary. We think that the court below was not at liberty to decline jurisdiction of the present case." *Schaffer v. Leimberg,* supra. (Italics ours.)

In *Egling v. Lombardo* the Court said:

"The objection that power must be specifically conferred upon the court is untenable. The United States is not a foreign sovereignty as regards the several states. Its laws are as binding upon the citizens and the courts of the states as the state laws are. If a federal statute gives a penalty without specifying how it shall be enforced, an action will lie in a state court unless the Congress has otherwise provided. Claflin v. Houseman, 93 U. S. 130, 23 L. Ed. 833. To the same effect is Miles v. Illinois Central R. R. Co., 315 U. S. 698, 62 S. Ct. 827, 86 L. Ed. 1129.

"If this is an action to recover a penalty, section 256 of the Federal Judicial Code vesting exclusive jurisdiction in the federal courts would, without more, be fatal. Cox v. Lykes Bros., 237 N. Y. 376, 143 N. E. 226; Moreno v. Picardy Mills, 173 Misc. 528, 17 N. Y. S. 2d 848. But section 305 of the Price Control Act, 50 U. S. C. A. Appendix, § 945, provides: 'No provision of law in force on the date of enactment of this Act shall be construed to authorize any action inconsistent with the provisions and purposes of this Act.' While this provision is somewhat awkward in its application to the present question, it was clearly intended to override prior legislation which would restrict its operation, or defeat its purposes." *Egling v. Lombardo,* supra.

By reason of the comprehensive character of the discussion, the case of *Miller v. Municipal Court of Los Angeles,* supra, does not lend itself to brief quotation. It contains a highly significant discussion and concludes as follows:

> "It is true that state courts generally have refused to assume jurisdiction to enforce acts of Congress which they have considered as 'penal in an international sense.' See cases collected in J. D. Barnett, op. cit., pp. 1206-1208; and see those cited in Huntington v. Attrill, supra, 146 U. S., page 672, 13 S. Ct. 224, 36 L. Ed. 1123; but see First National Bank of Charlotte v. Morgan, 132 U. S. 141, 10 S. Ct. 37, 33 L. Ed. 282; Ingraham v. Merchants Nat. Bank, 153 Iowa 408, 132 N. W. 869; McCreary v. First Nat. Bank, 109 Tenn. 128, 70 S. W. 821; Endres v. First National Bank, 66 Minn. 257, 68 N. W. 1092; and W. S. Reese, Jr., Concurrent Jurisdiction of State and Federal Courts under section 16 (b) of the Fair Labor Standards Act, 27 Va. L. Rev. 328, 343. But, considering the intent of the framers of the Constitution, the acts of the early Congresses, and the provisions of article VI establishing the supremacy of federal law, it seems clear that a state court, otherwise competent to exercise jurisdiction over the subject matter, the parties, and the amount in controversy, must assume jurisdiction of an action created by federal law enacted pursuant to a legitimate federal function, regardless of whether or not that action be considered either as penal or as furthering the governmental interest." *Miller v. Municipal Court of City of Los Angeles,* supra.

See also 11 Geo. Wash. L. Rev. 348; 11 Wash. L. Rev. 152.

■ We have seen that rights created under federal statutes may be enforced in state courts only if the "ordinary jurisdiction" of the state court is adequate

for the purpose. The meaning of the rule as established by the authorities is that state jurisdiction is adequate if under the state constitution and statutes its courts are open to the general class of cases to which a case arising under federal statute belongs. See *Herb v. Pitcairn; Mondou v. New York, N. H. & H. Ry. Co.; Forsyth v. Central Foundry Co.; Carse v. Marsh; Ingraham v. Merchants' National Bank; Schaffer v. Leimberg; Beasley v. Gottlieb; Egling v. Lombardo; supra.*

■ Clearly the ordinary jurisdiction of the circuit court of Oregon is adequate for the trial of the cases at bar. Various Oregon statutes authorize or provide for actions for penalties both by the injured party and by the state. O. C. L. A. § 1-208. See also O. C. L. A. §§ 1-205 (2), 8-701, 110-1519, 110-1519 (e), 13-302, 66-202, 77-243, 110-313, 110-349, and 110-836.

We proceed to a summary of conclusions that may properly be drawn from the authorities. The early cases in which the state courts refused jurisdiction of actions by the United States under federal penalty statutes were based upon the theory that Congress cannot confer on a state court any part of the judicial power of the United States.

The cases cited demonstrate that the jurisdiction of state courts is not based on any delegation of federal judicial power. On the contrary, in enforcing federal statutes, the state courts exercise the judicial power of the state. In *State ex rel. v. Olson,* supra, this Court said: "Jurisdiction is *conferred* upon state courts." Perhaps the word "conferred" was inapt. We might better have said jurisdiction is authorized, and, being authorized, should be exercised.

The argument to the effect that state courts have no duty to enforce federal statutes because a delegation of the federal judicial power would be unconstitutional applies, if it applies at all, equally to non-penal actions brought under federal statutes such as the F. E. L. A. and F. L. S. A., and to penal actions by the injured party under the E. P. C. A., as well as to penal actions by the United States under that act. If the jurisdiction of state courts is not based on a delegation of federal power, the entire argument becomes irrelevant. State courts enforce substantive rights created under the laws of other states of the Union. Are they then exercising the delegated power of the other states? Obviously not. Why then must we say that in enforcing a federal statute the state is necessarily exercising delegated federal judicial power. But the argument against state jurisdiction goes farther. Basing itself upon the constitutional non-delegability of federal power, it proceeds next to assert that the supremacy clause of the federal constitution has no applicability to the question. The argument is that to apply the supremacy clause begs the question for that clause applies only to the enforcement of constitutional federal statutes. But the supremacy clause is not invoked to establish the jurisdiction of the state courts or to support the theory that federal judicial power may be delegated to state courts. This does not mean that the supremacy clause is inapplicable.

■ Modern courts assert not only that state courts may, but ought, to take jurisdiction. Opponents of this doctrine see in the word "ought" an attempted delegation of federal judicial power. The anwer is, first, that state courts ought to take jurisdiction because, save in exceptional circumstances, that is the practice in common law jurisdictions under the

doctrines of the conflict of laws. See Restatement, Conflict of Laws, § 1, p. 1. The second answer is that the state of the forum ought in general to take jurisdiction under federal statutes because they must not in the exercise of state jurisdiction discriminate against federal rights.

Speaking of the power of state courts concerning their own jurisdiction, the Supreme Court recently said: "The freedom of the state courts to decide is, of course, subject to the qualification that the cause of action must not be discriminated against because it is a federal one." *Herb v. Pitcairn,* supra. Again it is said: "A state may not discriminate against rights arising under federal laws." *McKnett v. St. Louis & S. F. Ry. Co.,* supra. In *St. Louis B. & M. Ry. v. Taylor,* supra, the Supreme Court said: "No peculiarity of state procedure will be permitted to enlarge or abridge a substantive federal right." See also *Minn. & St. Louis R. R. Co. v. Bombolis,* supra.

Here is the crucial distinction between federal rights in a state court and rights of another state in a state court. Here the supremacy clause takes effect. The laws of Maine or California, having no extra-territorial effect, are not the laws of Oregon. There are two, and only two, laws which exist as such within the territorial boundaries of Oregon: The laws of Oregon and the laws of the United States.

■ The E. P. C. A. is the law in Oregon, and within Oregon it is the supreme law of the land and the courts in their official capacities are bound thereby. The supremacy is not a supremacy for defining or establishing the general jurisdiction of state courts. It is a supremacy which requires that state courts should not, in the exercise of their general jurisdiction, dis-

criminate against rights arising under federal law (the law in Oregon).

It is argued that Oregon does not enforce the strictly penal law of other states of the Union and hence there would be no discrimination in refusing to enforce the strictly penal laws of the United States. But the rules under which the State of Oregon enforces rights arising under the laws of other states are the Oregon rules of comity, or of the conflict of laws. When it refuses so to enforce, it makes an exception to the general rule of comity based on public policy, an exception which it has been said is based on principles wholly independent of the Constitution. See cases supra. The rules of conflict of laws do not embrace the federal-state relationship. If those rules are independent of the Constitution, they cannot be controlling when they conflict with principles of the Constitution. Is it to be argued here that Oregon enforces the Federal Employers' Liability Act merely under the rules of comity? Even if federal statutes are enforced only by comity, still there is no basis for refusal to enforce constitutional federal statutes any more than there is a basis for the refusal to enforce the statute of another state when the public policy of Oregon is the same as the public policy of the state under which the right was created.

In *Moore v. Mitchell*, Judge Learned Hand in a concurring opinion states the basic reasons underlying the refusal of courts to enforce the penal laws of another sovereignty at the suit of the sovereign. He asserts that a court will not recognize rights of a foreign state if they run counter to the settled public policy of the forum. The inquiry on such an issue is not delicate when the question arises between private

persons, "but it takes on quite another face when it concerns the relations between a foreign state and its own citizens * * *."

"To pass upon the provisions for the public order of another state is, or at any rate should be, beyond the powers of a court; it involves the relations between the states themselves with which courts are incompetent to deal, and which are intrusted to other authorities. It may commit the domestic state to a position which would seriously embarrass its neighbor. Revenue laws fall within the same reasoning; they affect a state in matters as vital to its existence as its criminal laws." *Moore v. Mitchell,* 30 F. (2d) 600.

This is a sound analysis of the rule of The Antelope, supra, but it demonstrates the inapplicability of that rule to cases arising under federal statute. The state can have no public policy against a valid federal statute. Assumption of jurisdiction involves "no delicate relation with which the courts are incompetent to deal and which are intrusted to other authorities." An assumption of jurisdiction cannot seriously embarrass the United States, for the appellate power of the United States Supreme Court is co-extensive with the concurrent power of state courts under federal statutes. As indicated by Judge Hand the principles which underlie the refusal of state courts to enforce foreign penalties are similar to the reasons which have been thought to apply to the enforcement of foreign tax claims. In *Milwaukee County v. White Co.,* supra, the Court said:

"The objection that the courts in one state will not entertain a suit to recover taxes due to another or upon a judgment for such taxes is not rightly addressed to any want of judicial power in courts which are authorized to entertain civil suits at law. It goes not to the jurisdiction but to the merits, and

raises a question which district courts are competent to decide." *Milwaukee County v. White,* supra.

The question is not the existence of jurisdiction but the propriety of exercising it.

■ There is little distinction in principle between the cases in which a buyer successfully sues under the E. P. C. A. and those in which the Administrator sues. The right is created in the same section and by the identical words. It is given to the buyer; but, if he fails to sue, "such action" may be brought by the Administrator and the buyer's right is barred by the judgment. Congress gave purchasers the right to sue because that system had proved to be a successful enforcement device. The true nature of penal statutes is for the determination of the court of the forum, whatever the provision for recovery may be called in the enacting statute. *Huntington v. Attrill, Miller v. Municipal Court of City of Los Angeles, Regan v. Kroger Grocery & Baking Co., Loucks v. Standard Oil Co.,* supra; 21 C. J. S., Courts, § 71, p. 110.

We usurp no power in holding that the vindication and enforcement of the federal policy against inflation was a manifest purpose of the provision authorizing suit by the purchaser.

When a purchaser sues, the Price Administrator is directed to intervene in the interests of the United States to assist in enforcing the penalty. Surely that provision is not merely the product of Congressional solicitude for the purchaser. It constitutes the active interposition of the United States for the purpose of vindicating Congressional policy. We are cited to no other penal statute giving rights to an injured party which contains this unique provision directing the United States to intervene and prosecute in aid of the

suit. That provision gives a strictly penal cast to the proceedings even in suits where the injured party is plaintiff. "* * * We think that as to the purchaser the principal purpose of the Act is not mainly redress of the private wrong, but encouragement to enforce the provisions for the public." *Bowles v. Farmers Nat. Bank of Lebanon, Ky.,* 147 F. (2d) 425. Yet the courts, by a weight of authority which cannot now be challenged, have upheld the jurisdiction of state courts in purchaser-plaintiff, administrator-intervener cases. There is little distinction in fact or purpose between those cases and these which are brought under the identical provisions of the statute by the Administrator alone. Only an ancient shibboleth, the rule of The Antelope, remains to bar the Administrator from the courts of Oregon. Valid as a rule of international law, it is invalid here.

Two recent Supreme Court decisions have an important bearing. In *Bowles v. Willingham,* supra, the Court speaking of state courts said: "* * * They have concurrent jurisdiction over all *civil enforcement suits.* * * *" (Italics ours.) In *Hecht Co. v. Bowles* the same Court said: "* * * 205 (a) governs the procedure in both federal and state courts, for 205 (c) gives the state courts concurrent jurisdiction * * * of *civil enforcement proceedings." Hecht Co. v. Bowles,* 321 U. S. 321, 88 L. ed. 754, 64 S. Ct. 587. (Italics ours.)

The authoritative effect of these pronouncements depends upon what is meant by "civil enforcement proceedings." The decisions are in some conflict as to whether statutes empowering the United States to sue for penalties should be considered civil and remedial or criminal in nature. Compare *Coffey v. United States,* 116 U. S. 436, 29 L. ed. 681, and *Various Items*

*v. United States,* 282 U. S. 577, 75 L. ed. 558. It is clear that some statutes involving an element of intended punishment are nevertheless treated as civil and even remedial. The category of civil proceedings is not limited to actions by the Government to enforce its property rights, *Stone v. United States,* 167 U. S. 178, 42 L. ed. 127; nor to cases in which the defendant has defrauded the Government by collusive bidding, *United States v. Hess,* 317 U. S. 537, 87 L. ed. 443, (a qui tam action); nor to cases in which the United States collects a fifty per cent penalty by reason of fraudulent income tax return, which recovery is called "remedial in nature," *Helvering v. Mitchell,* supra. The category also includes action by the United States for penalties in which the Government has suffered no loss in any way and in which the authorized action, as in the case at bar, was to vindicate law for the protection of the public.

*Chicago B. & Q. R. v. United States,* 220 U. S. 559, 55 L. ed. 582, was an action to recover penalties for violation of the Federal Safety Appliance Act. It was held to be a civil action. *Grant Brothers Construction Co. v. United States* was an action of debt by the United States under a federal statute imposing a penalty for violation of the immigration laws. The statute employed the words "forfeit and pay," yet it was held that the statute was civil in substance as well as form and "is attended with the usual incidents of a civil action." *Grant Brothers Construction Co. v. United States,* 232 U. S. 647, 58 L. ed. 776.

In *Helvering v. Mitchell* the Court, by Brandeis, J., said:

"Remedial sanctions may be of varying types. One which is characteristically free of the punitive

criminal element is revocation of a privilege voluntarily granted. Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforcible by civil proceedings since the original revenue law of 1789. Act of July 31, 1789, chap. 5, § 36, 1 Stat. at L. 29, 47. In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions." *Helvering v. Mitchell,* supra.

The Court cited both of the cases last above reviewed. See also *Hepner v. United States,* 213 U. S. 103, 53 L. ed. 720, 29 S. Ct. 474, 27 L. R. A. (N. S.), 739, 16 Ann. Cas. 960.

■ In determining the essential nature of the penalty actions under § 205, E. P. C. A., we are justified in holding that they are civil enforcement proceedings within the meaning of that term as employed in *Hecht v. Bowles,* supra.

■ Perhaps the most serious question as to the enforcement of the E. P. C. A. in state courts has yet to be mentioned. The state courts have full power to consider the constitutionality of the provisions of the Act, but § 204 (d) provides:

"Except as provided in this section, no court, Federal, State or Territorial, shall have jurisdiction or power to consider the validity of *any such regulation,* order, or price schedule. * * *" Emergency Price Control Act of 1942, as amended, June 30, 1944, § 204 (d). (Italics ours.)

The constitutionality of such a provision has been upheld in the United States Supreme Court as to cases brought in the federal courts, *Bowles v. Willingham,* supra; *Lockerty v. Phillips,* supra; but those courts

have only such jurisdiction as Congress gives them. The limitation has also been upheld in the state courts. *Ritchie v. Johnson,* 158 Kan. 103, 144 P. (2d) 925; *Schaffer v. Leimberg,* supra; *Desper v. Warner Holding Co.,* supra; *Kittrell v. Hatter,* 243 Ala. 472, 10 So. (2d) 827; *Miller v. Municipal Court of City of Los Angeles,* supra; *Horton v. Cantrell,* Mo. 187 S. W. (2d) 860; *Mayfield v. Frierson,* Ga., 34 S. E. (2d) 847, 35 S. E. (2d) 302. Nevertheless such a provision restricting the scope of inquiry in trials in state courts goes to the verge of constitutionality. However, if that provision should be unconstitutional as applied to a state court, it would not affect the right or duty of a state court to try a case under the E. P. C. A. if no issue involving the validity of administrator's orders is presented. Limitation upon the jurisdiction of the courts applies not to the question of the administrator's power but to the question of the legality of the manner of exercise thereof, whether arbitrary or in excess of statutory authority.

■ In the cases at bar the defendants have challenged the jurisdiction of the state court, and the cases were dismissed for want thereof. There is no pleading or evidence challenging the regularity of the Administrator's proceedings under the Act, and there could be none at that stage of the proceedings. We cannot hold the act unconstitutional merely because a regulation which is not challenged might have been arbitrary, and, if so, the prescribed review might have proved inadequate. See *Yakus v. United States,* supra.

"There is nothing in the complaint disclosing how the maximum rental on the defendants' property was arrived at. So far as disclosed by the record, it may have been arrived at by agreement, or after a hearing before the commissioner. The

question of due process in the fixing of the maximum lawful rental is not presented by the demurrer to the complaint.'' *Campbell v. Heiss,* supra.

A fortiori if the only challenge to the complaint goes to the question of jurisdiction.

In *Regan v. Kroger Grocery & Baking Co.,* supra, the act was held constitutional, and the Court said:

"No question as to the validity of any such regulation is involved in this case, if the act is constitutional. The objections are based solely upon the alleged invalidity of the act itself.'' *Regan v. Kroger Grocery & Baking Co.,* supra.

In *Ritchie v. Johnson,* the Court said:

"If the appellant believes that such regulations or orders are unduly restrictive or arbitrary, his remedy is to follow the procedure for administrative review leading up to a hearing before the Emergency Court of Appeals, and there is no pleading or contention that he has done so.'' *Ritchie v. Johnson,* 158 Kan. 103, 144 P. (2d) 925.

The validity of the Administrator's order and of the provisions that "no state court shall have jurisdiction to consider the validity of any such regulation'' is not before the court on this record.

 The E. P. C. A. was enacted under the war power to prevent threatened inflation which would have imperilled the productive capacity on the home front and the success of the armed forces abroad. The alleged violation of the Act occurred while armed conflict was still raging. Though the shooting may have ceased, the menace of inflation is perhaps greater than before. The war is not yet officially terminated. From the decisions of the United States Supreme Court, we learn that legislation enacted under the war powers may be constitutional during the emergency but may

become unconstitutional under changed conditions. *Chastleton Corp. v. Sinclair,* 264 U. S. 543, 68 L. ed. 841; *Nashville C. & St. L. R. Co. v. Walters,* 294 U. S. 405, 79 L. ed. 949. And the courts have power to ascertain for themselves when conditions have so changed. The emergency giving rise to the E. P. C. A. still continues officially and in fact. It is the duty of the courts to exercise their power, whether mandatory or discretionary, in aid of the national policy so long as the conditions which validate the Federal Act shall persist.

■■ Concerning the equity suits brought by the Administrator to restrain further violations in Cases 4 and 5, a simpler problem is presented. They were dismissed for want of jurisdiction. The reasoning of the Circuit Court is to the effect that state courts will not only refuse to enforce penalties created by federal statute, but will also refuse to enforce a non-penal provision of a federal statute, if a penalty is involved in some other part of the Act. The equity suits seek no penalty. They are based upon a provision which would be equally effective if there were no penal provision in the statute. Suits to restrain violation of police regulations are not penal. Their function is to afford preventive relief, not to redress wrongs already committed. *McFarland v. O'Brien,* 6 F. (2d) 1016; *National Circle of Daughters of Isabella v. National Order of Daughters of Isabella,* 252 Fed. 815; *United States v. Richards,* 201 Wis. 130, 229 N. W. 657. Clearly the state court had jurisdiction in all five cases.

■■ The Circuit Court takes the position that the injunction suits could not be brought in state courts because the federal statute provides that no bond shall be required. Our state procedure requires a bond as a condition for the issuance of a temporary injunction, but none is required for a final injunction after a hearing

on the merits. No temporary injunction has been issued, and it may be that none will be issued. Nor does the question of the alleged nonliability of the United States for costs go to the issue of jurisdiction. *Bowles v. Angelo,* Ct. of Civ. App., Tex., 188 S. W. (2d) 691.

The only remaining question relates to the sufficiency of the pleadings in Cases 1, 3 and 5 when challenged by general demurrer. Our attention has not been directed to any demurrable defect in the Barde Steel case (No. 1), and the complaint appears to be sufficient. In the Lombardi case (No. 3) the contention is that it is not sufficiently alleged what the maximum rents were, or how they were ascertained, or that the rents charged are not the maximum rents chargeable. The complaint alleges that the Administrator promulgated a rule fixing maximum rents and that defendant charged rents in excess thereof; and Exhibit A of the complaint shows the amount of the legal rate and the amount of overcharge in each case. The objection is not well taken. In the Anderson case (No. 5) it is contended that the complaint should have alleged that the remedy at law is inadequate because the injury threatened is irreparable. The usual allegation that she has no plain, speedy and adequate remedy at law appears in the complaint. This is not a suit to enjoin interference with property rights of an individual. It is based on a statute expressly authorizing injunction "whenever in the judgment of the Administrator any person has engaged or is about to engage" in a violation of the regulations. Neither the inadequacy of the legal remedy nor irreparable injury need be alleged. *Hecht Co. v. Bowles,* supra; *Bowles v. Huff,* 146 F. (2d) 428; *Bowles v. Elzea,* 59 F. Supp. 1012. It is contended that the transaction set forth in the Ander-

son case did not constitute a "sale." The complaint alleges that the defendant sold cigarettes on a punch board at prices exceeding those prescribed by the regulation, that she refused to sell until after the purchaser had secured a winning number on the punch board, and that the practice was employed as a subterfuge to evade the regulation. The complaint is not artistically drawn, but we think it sufficiently charges a violation of the regulation.

Being of the opinion that the trial court had jurisdiction in each of the cases, it follows that the orders of dismissal were entered in error. The said judgments and decrees are reversed and the causes are remanded for further proceedings conformable to this opinion.

ROSSMAN, J., dissenting.

The exhaustive opinion written by Mr. Justice BRAND shows that the courts of any state have jurisdiction over causes of action governed by a federal statute in which the plaintiff is a private party who seeks redress for a wrong done to him in violation of the statute, but the opinion leaves me unconvinced that the Federal Government entrusts to the courts of any state actions purely penal in which the government itself is the plaintiff and in which it demands the imposition of punishment. The two situations, I think, are very dissimilar. I can not believe that any government would yield to another government's courts the interpretation and enforcement of its penal laws in actions brought by the government itself.

As the majority opinion points out, § 256 of the Judicial Code (28 U. S. C. A., § 371) says:

"The jurisdiction vested in the courts of the United States in the cases and proceedings herein-

after mentioned, shall be exclusive of the courts of the several States: * * *

"Second. Of all suits for penalties and for forfeitures incurred under the laws of the United States."

That statute precludes this court from entertaining jurisdiction over this action, unless we can say that § 256 has been repealed. Obviously, the Emergency Price Control Act does not expressly repeal § 256; in fact, it does not mention it. Hence, § 256 has not been expressly repealed. Time after time the courts have pointed out that repeals by implication are not favored. No statute is deemed repealed by implication unless no other view is available. The majority depend upon *Forsyth v. Central Foundry Co.*, 240 Ala. 277, 198 So. 706, and *Cox v. Lykes Bros.*, 237 N. Y. 376, 143 N. E. 226, for the point that when a federal act employs such a term as "liquidated damages" and not the word "penalty", the courts assume that Congress did not intend that actions brought under the act should be subject to § 256. However, in both of those cases a private party was the plaintiff and the sums sought could readily be construed as damages. In the present case, a penalty, and nothing but a penalty, is sought. The pleadings do not employ the term "damages" and, of course, the government could be entitled to no damages in any of these five actions. A penalty, and nothing but a penalty, can be awarded to it. The Forsyth and Cox opinions, in my belief, have no application to this case.

To me, it seems that the words of Chief Justice Marshall, in *The Antelope*, 23 U. S. 66, 6 L. Ed. 268, (10 Wheat.): "The courts of no country execute the penal laws of another", are controlling. That decision has never been overruled. When Congress enacted the

Emergency Price Control Act it must be presumed to have been familiar with the legal principle that the courts of one country do not enforce, in actions instituted by another government, the penal laws of the latter. That principle is not only one of lawyer's law, but is also a fundamental rule of good government which is universally recognized. Surely Congress, when it wrote the Emergency Price Control Act, intended that in the construction of its words the foregoing principle would be employed.

The implications of the majority opinion are great. If treble damages aggregating thousands of dollars are recoverable in the present action, it will not be long before the state courts, at the behest of federal officials and agencies, will be imposing fines and jail sentences. Do we stand prepared to sustain and impose the numerous sanctions to which the federal administrative agencies daily resort? To me, it seems that we are bound by the rule enunciated in *The Antelope,* supra: ''The courts of no country execute the penal laws of another.'' That is not only the pronouncement of the highest court of our land, written by our country's most brilliant jurist, but its practical wisdom is inescapable. When Chief Justice Marshall wrote the words just quoted he, manifestly, had in mind penalties imposed in actions maintained by a sovereign, as distinguished from an award of damages granted a private party who claims he was injured through the violation of a federal statute.

I dissent.