**BOWLES, Price Administrator, v. WILSON & CO., Inc.**

**No. 4443-Y.**

District Court, S. D. California, Central Division.

Jan. 4, 1946.

688

H. Eugene Breitenbach and Wm. U. Handy, Office of Price Administration, both of Los Angeles, Cal., for plaintiff.

O'Melveny & Myers, Pierce Works, and R. H. Lindman, all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

The above-entitled cause heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the defendant that plaintiff take nothing by its action.

## I.

### All-Vegetable Margarine Is a New Product.

■■ I am of the view that the Administrator has failed to prove that the defendant violated the ceiling price on oleomargarine between the 12th day of May, 1944, and the first day of April, 1945, or at any time, so as to entitle the Administrator to recover the amount of overcharges, $79,-117.68, or any part of such sum. And the evidence in the case clearly shows such precautions to arrive at the proper price as to exclude all possibility of trebling any damages, even if the right to recover had been established. See Bowles v. Jung, 1944, D. C. 57 F.Supp. 701.

While elaborate briefs have been filed and counsel have placed at the disposal of the Court a full transcript of the testimony, the issue in the case is rather simple.

It is this: Was the defendant as a processor and seller other than at retail, on the dates just mentioned, entitled to charge a ceiling price of 23 cents for all-vegetable oleomargarine in the Los Angeles area?

■ It is clear from the evidence that the defendant is a single seller on a national scale (GMPR 1499.20(s)), that its prices are determined centrally at its Chicago office, and that the managers of local plants have nothing whatsoever to do with the fixing of prices. The Administrator's chief contention that the price was excessive is grounded on the proposition that the all-vegetable oleomargarine, which the defendant sold in 1944, was the same or an identical product as an animal and vegetable margarine which the defendant manufactured at Los Angeles and sold at a lower price in March, 1942, the base period chosen for the fixing of the price, and which contained 70 per cent of animal fat (GMPR.2). I believe the Court must take judicial notice of the fact that, in the matter of edibles, an all-vegetable product cannot be compared with a partly animal and partly vegetable product in which the animal fats amount to 70 per cent. And the evidence in the record shows the differences between the two. After all, to say that both are edible does not solve the question. Nor is the question solved by attempting to show that they are as palatable to some people. The truth of the matter is that an edible product, like oleomargarine made chiefly of animal fat, is not the same as, or similar to (GMPR 2(a)(2)), one made entirely of vegetable ingredients. The fact that both are used as spreads and may be a poorman's substitute for butter is of little consequence. It is as unrealistic to claim identity for them as it would be to claim identity for Crisco or other all-vegetable shortenings and shortenings composed entirely or partially of lard, merely because they are both used for the same purpose—shortening. I am quite certain that a physician or dietitian who placed a patient on an all-vegetable diet forbidding him to eat animal fats would be shocked if he were informed by the patient that instead of an all-vegetable margarine, he had chosen to eat a margarine consisting of 70 per cent animal fats, because they were both the same. This is not a case where a processor, by increasing certain ingredients, changes a blend, such as occurred in the instance suggested by the Administrator—the coffee blend (OPA Service, p. 11: 1024). The Administrator, himself, has ruled that the addition of Vitamin A to margarine makes it a new commodity, distinct from non-vitamin margarine (Report 286, 42, 418.11). An all-vegetable product manufactured in lieu of a combination animal-vegetable product is a new product in law and in fact. And as GMPR 1499 does not contain a definition of "same commodity," the matter becomes one for judicial interpretation. See my opinion in Bowles v. Jung, 1944, D. C., 57 F.Supp. 701, 707.

Interpretations by the Administrator are not given the force of law. Only regulations have such force. Bowles v. Nu Way Laundry Co., 1944, 10 Cir., 144 F.2d 741, 746; Ambrosia Brewing Co. v. Bowles, 1944, Em.App., 147 F.2d 550, 552. And no other administrative regulation has been called to my attention, which would deny to such product its quality as new.

The contention to the contrary—absent a binding regulation—calls for rejection on the basis of the realistic facts already referred to, even if we take into consideration the definition of "similar commodities" contained in note to GMPR 1499.2.

## II.

### The Defendant Was Not Limited to Prices Charged by Armour & Co.

If the problem is approached from the other angle, that of fixing a ceiling price with reference to the "most closely competitive seller" (GMPR 1499.20(g)), I believe the result is the same.

At the trial I expressed the thought that in determining a price ceiling by reference to competitors, we are not limited to persons who merchandise the product in the same manner. Competition is between products. And I stated that, in my view, if Sears, Roebuck & Co. sold a certain brand of tires, it had the right to fix its ceiling not with sole reference to Montgomery Ward & Co., who carry on the same type of merchandising, but with tire companies who also sell in the field in large quantities. I do not believe that GMPR 1492.-20(g) warrants the limitation which the Administrator would introduce into the definition.

However, assuming that it does, it is quite evident that the defendant is not limited to choose Armour & Co., but, on the contrary, could base its ceiling price by reference to Swift & Co., who are also packers who market oleomargarine along with their meat products.

More, as a single seller, the defendant could price its product with reference to its own all-vegetable Eastern product.

I add that the evidence in the case does not warrant the contention of the Administrator that a differential existed in the price charged by the defendant in the Los Angeles area which would compel the defendant to automatically grant such differential in fixing the price of a new product which it did not, during the base period, manufacture or sell in the Los Angeles area.

Hence the ruling above made.

Formal findings and judgment to be prepared by counsel for the defendant under Local Rule 8.