## PORTER v. JORGENSEN et al.
### Civ. No. 738.

District Court, S. D. California, S. D.

Dec. 7, 1946.

Towson T. MacLaren, of Los Angeles, Cal., Wadieh S. Shibley, of Oakland, Cal., Shephen D. Monahan, Warren L. Shobert, Herman W. Grunsky and James Camplin, all of Los Angeles, Cal., for plaintiff.

Donnelley and Wood and Richard P. MacNulty, all of San Diego, Cal., for defendant.

YANKWICH, District Judge.

By this action, plaintiff, the Administrator of the Office of Price Administration, seeks to recover the sum of $2,850, being treble the amount of an alleged overcharge on the rental of housing accommodations in the San Diego rental area. The property was a house which was rented beginning September 1, 1945, at a rental of $26 per month. The tenancy continued until the last part of February, 1946, when it was terminated by the sale of the property. It is the contention of the Administrator that the defendant had tied the rental to a purchase of furniture in the sum of $950, in violation of Section 9, Subdivision (b) of Regulation 1388 of the Office of Price Administration covering defense rental areas. The regulation, at the time involved, read: "(b) Purchase of property as condition of renting. Specifically, but without limitation on the foregoing, no person shall require a tenant or prospective tenant to purchase or agree to purchase furniture or any other property as a condition of renting housing accommodation."

The defendant has challenged the application of this regulation to the case here, upon the ground that it is penal in its nature and does not apply to an action which seeks to recover treble the amount of overcharges under the provision of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix, 925, subd. (e). It is true that the regulation does not specifically provide that for a violation of the particular practice, or other practices denounced by Section 9, recovery of treble damages shall be had. The reason for this is obvious. The penalties or damages for violation of the statute and of the regulations which it authorizes the Administrator to make were prescribed by the Congress. 50 U.S.C.A.Appendix, §§ 904, 925, subd. (e). All that the Administrator did, in this, as in other cases, was to define certain practices not specifically enumerated. By such definition, they became the "overcharges" for which, in rent cases,

damages might be recovered under the statute. Hence the position of the defendant in this respect is untenable, as I have already held in denying the motion to dismiss.

However, an analysis of the factual situation leads me to the conclusion that the Administrator has failed to prove by a preponderance of the evidence that there was a violation here. We are not confronted with the usual situation where a landlord, as a subterfuge, makes a purchase or agreement of purchase of furniture a condition of renting housing accommodations. The particular property here was a house in which the owner lived, and which had not been rented before by him. Compelled, for business reasons, to move to another house which he owned elsewhere in San Diego, he went to the Office of Price Administration and consulted them about the rental to be charged for the house and filed a registration. As he owned other furniture and houses, he was desirous of selling this house and the furniture in it, together or separately, or renting the house furnished. He caused an advertisement to appear in a San Diego newspaper under date of September 1, 1945. The Administrator seems to base his entire case upon the wording of this advertisement:

"Houses for Rent.—Unfurn. 55: Now vacant. Will rent 5-room house to party buying furniture, $950. Rent $26. 4121 29th St."

A first reading of it gives the impression that the rental was "tied" to the purchase of the furniture. However, the evidence in the case shows clearly that, at no time, during the negotiations, did the tenant, Mr. Henry Weissenberg, ask if the house "could be rented without the furniture." No one has contradicted the testimony of the defendant that he had consulted the Office of Price Administration about the manner of pricing the furniture, or that he was willing to sell it separately. The tenant admits that at the very time when, in answer to the advertisement, he talked to the defendant, there were two women present who, according to the defendant, had discussed, or were discussing either the purchase or the rental of the property or the furniture. It is also the undisputed assertion of the defendant that he was anxious to sell the house. He actually sold it early in February, 1946. The versions of the transaction of the defendant and the tenant do not differ greatly. More, the version given by the defendant is corroborated, in many respects, by the tenant. I have already adverted to the fact that the tenant, at no time, offered to rent the premises without purchasing the furniture. The tenant also admitted that he had stated to the defendant that his employer was seeking for him either a house for rent or purchase and that he could use many of the pieces of furniture elsewhere. There is also corroboration of the fact that the purchase was not tied to the rental in the receipt which was prepared by the tenant himself, on the stationery of his employer. (Plaintiff's Exhibit 3). This receipt, although dated September 1, 1945, was actually signed on September 4, 1945, when the sum of $756 was paid as the balance on the furniture. Previously, on September 1, 1945, a deposit of $20 had been made and a check for $200 given. This receipt shows that the parties were discussing rental for a six-months period. The notations in pencil indicate that this and a four-months period were talked over and that various amounts to be paid for such periods were actually jotted down. After the property was sold, the tenant made no claim to the owner that the purchase of furniture was conditioned on the tenancy or sought a refund on that account. He made no offer to return the furniture to the defendant. All he asked for was a few days grace, beyond his rental period, in which to move and dispose of the furniture. He sold the major portion of it to another and retained certain pieces for himself. Such exercise of ownership is consistent with only one thing, namely, an intent to consider the sale of the furniture as such, and apart from the rental itself. A man of the business experience and intelligence of the tenant would have been the first to protest, had a month-to-month tenancy been tied to the purchase of $950 worth of furniture, without any recourse on termination. The price at which the furniture was sold by the tenant ($200) is not indicative of its

value. Value is not important, except that in a case of this character, it may indicate whether the sale was a transaction in good faith or a mere subterfuge.

It is the uncontradicted testimony here that the defendant,—who is engaged in the refrigeration business, and who had had many dealings with the Office of Price Administration,—actually consulted the San Diego office, and at least two men high in authority in it, before he advertised his house for sale, and that they advised him how to price the furniture. The sale was below the permissible ceiling.

I have no sympathy with landlords or others who have resorted and do resort to various stratagems to avoid the controls which the Congress of the United States deemed advisable to impose for the duration not only of what is known as "the shooting war", but of the economic dislocation resulting from the war, until its legal termination by legislative and executive action. But in this case, we are not confronted with any attempt to avoid such control. On the contrary, the evidence carries the conviction that the sale of the furniture was a bona fide sale by one who had not rented his property before, and who, acting in good faith, took the precaution of ascertaining from the Office of Price Administration the manner in which the property could be rented and the furniture sold. I realize that innocent non-conformity may be as harmful to the post-war economy as any other. See, The Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; and see, the comment of the Supreme Court of Oregon in Bowles v. Barde Steel Co., 1945, 164 P.2d 692, 716, 162 A.L.R. 328. For this reason, recovery of money damages may be had even if good faith be shown, where precautions are not taken (Bowles v. American Stores, Inc., 1943, 78 U.S.App.D.C. 238, 139 F.2d 377; Bowles v. Pechersky, D.C.Pa. 1946, 64 F.Supp. 641, 646; Bowles v. Weitz, D.C.Pa.1946, 64 F.Supp. 829) or even if both good faith and due care be shown. (Bowles v. Franceschini, 1 Cir., 1946, 145 F.2d 510; Bowles v. Hastings, 5 Cir., 1946, 146 F.2d 94, 95). Provided, of course, that there is a violation. However, in this case, not only does it appear that the transaction was entered into in good faith and that there was the due care which one may expect under the circumstances, from a reasonable person, but also that, all things considered, there was no violation of the law. See Bowles v. Wilson & Co., D.C.Cal.1946, 63 F.Supp. 687.

Hence the judgment will be for the defendant that the plaintiff take nothing by this action.

Findings and judgment to be prepared by counsel for the defendant under Local Rule 8.